IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JAMES D. JENKINS,

                      Plaintiff,

v.

C/O II WIEGEL,

                      Defendant.

OPINION & ORDER

13-cv-285-jdp

---

Plaintiff James Jenkins is a prisoner at the Wisconsin Secure Program Facility, where defendant Keith Wiegel is a correctional officer. Defendant may have caught plaintiff's hand in the cell door trap while passing out supplies to inmates in segregation cells. Plaintiff contends that defendant slammed his hand maliciously, and he brings suit under 42 U.S.C. § 1983, alleging that defendant violated his rights under the Eighth Amendment by using excessive force.

An excessive force case commonly turns on the officer's motives. If a correctional officer uses force wantonly, for the purpose of inflicting pain, the officer violates the inmate's Eight Amendment rights even if the injuries are minor. If the correctional officer uses force for a legitimate penological objective, he does not violate the inmate's rights, even if the officer used force carelessly or the amount of force seems, in retrospect, unreasonable. An officer's error of judgment in the use of force does not violate the Constitution.

Defendant has moved for summary judgment. To survive summary judgment, plaintiff must adduce some evidence to show directly, or at least to support a reasonable inference, that the officer acted wantonly or maliciously. Plaintiff's bare assertion that the officer acted maliciously is not enough. In this case, the incident was recorded on video, and there is no evidence from which a reasonable jury could conclude that defendant acted maliciously or

wantonly in closing the trap, even if plaintiff's hand got caught in the process. Defendant's motion for summary judgment will be granted.

## UNDISPUTED FACTS

The following facts are undisputed, except where noted. Plaintiff is a prisoner confined at the Wisconsin Secure Program Facility (WSPF), a maximum security prison located in Boscobel, Wisconsin. Plaintiff was a disruptive prisoner. In the first three months of his custody in the Wisconsin prison system, before he was transferred to WSPF in August 2012, he received eight conduct reports, including one for battery.[1] Defendant Wiegel is a correctional officer at WSPF. The incident at issue in this case occurred in September 2012, while plaintiff was held in segregation at WSPF (for, among other reasons, battery), and defendant was assigned to plaintiff's unit.

Supplies are distributed to WSPF segregation inmates twice a week. Each inmate may have a roll of toilet paper, a bar of soap, and a pen. Inmates may not accumulate these supplies, and to get a fresh roll of toilet paper or a new pen, the inmate must provide the empty roll or the old pen to the officer distributing supplies. The door of a segregation cell has two "traps," openings with metal doors, large enough to reach through. The upper trap is about waist-high, with a door that opens downward and out. It is used to pass supplies to the inmate, and correctional officers may close and lock the trap for security purposes. Video cameras continuously monitor the interior of the segregation cells and the vestibule area outside the segregation cell door.

---

[1] Plaintiff contested defendant's proposed fact concerning his assaultive history on the grounds that his prison face card did not expressly mention battery or assault. But his face card shows three battery offenses (violations of DOC 303.12) among 29 charges from April 22, 2012 to January 30, 2014. Dkt. 58-6.

Shortly after 8 a.m. on September 19, 2012, defendant was delivering supplies to segregated prisoners. When defendant arrived at plaintiff's cell, plaintiff requested a pen and a roll of toilet paper. Defendant exchanged the pen, but did not provide the toilet paper because plaintiff did not provide an empty roll for exchange. Although the exact wording is disputed, plaintiff said something like "give me a fucking roll of toilet paper" and placed his hand on the door to the trap. Defendant closed and locked the trap.

What happened in the process of closing the trap is not perfectly clear, despite the fact that the exchange was recorded on cameras on both sides of the cell door. Defendant says that plaintiff started to push on the door to keep it open, but that plaintiff removed his hand and that plaintiff's hand was never caught in the trap. Plaintiff says that defendant slammed his hand in the trap with extreme force, and he kept pressure on the trap while Jenkins screamed in pain. As explained more fully below, it is possible that plaintiff's hand or fingers may have been pinched in the trap, but plaintiff's version of the event refuted by the video evidence.

After defendant closed the trap, plaintiff yelled something like "you fucking bitch I will get you" (defendant's version) or "you fucking bitch I'm writing you up" (plaintiff's version, meaning he would file an inmate grievance). Plaintiff requested medical attention, and a nurse evaluated him. Plaintiff was given ice and ibuprofen. For reasons that are not fully explained, the nurse's report is not in the record, but it appears that the nurse reported no swelling, cuts, or abnormalities to the plaintiff's hand other than a small scrape on the knuckle. Plaintiff contends that the nurse "downplayed" plaintiff's injuries, but two days after the incident he told medical staff that "I'm good."

Plaintiff and defendant had a further exchange the morning of September 19, at about 11 a.m. Defendant placed a magnetic "back of cell" restriction tag on plaintiff's cell. Plaintiff contends that while defendant was placing the tag, plaintiff said, "You know you slammed my

3

hand in that trap," and defendant said, "I'll slam it there at lunch." Defendant denies this exchange. But both sides agree that when the tag was placed on plaintiff's cell, plaintiff yelled to an inmate in an adjacent cell, "Did you hear that, he just threatened me?" Plaintiff was issued a conduct report for lying. The conduct report was investigated by prison staff and plaintiff was found guilty.

Plaintiff was also issued a conduct report for disrespect, making threats, and disobeying orders for his statements during the 8 a.m. exchange. Plaintiff was found guilty only of disrespect. Although defendant expends considerable effort documenting the investigation of the conduct reports, the outcome of these investigations is not material to plaintiff's case in this court.

## DISCUSSION

To prevail on a claim of excessive force against a correctional officer, a plaintiff must prove that the officer applied force "maliciously and sadistically for the very purpose of causing harm," rather than "in a good faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). The factors relevant to this determination include why force was needed, how much force was used, the extent of the injury inflicted, whether the defendant perceived a threat to the safety of staff and prisoners, and whether efforts were made to temper the severity of the force. *Whitley*, 475 U.S. at 321.

To succeed on a motion for summary judgment, the moving party must show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to

4

return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). All reasonable inferences from the facts in the summary judgment record must be drawn in the nonmoving party's favor. *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999). If the nonmoving party fails to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment for the moving party is proper. *Celotex*, 477 U.S. at 322.

**A. Plaintiff lacks evidence to show the wanton use of excessive force**

In the context of an excessive force claim such as this, the question is not whether the correctional officer acted reasonably, whether he was careful, or whether he might have been able to accomplish his objective with less force. To survive summary judgment, plaintiff must adduce evidence to show that defendant acted wantonly, for the purpose of inflicting pain.

> Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury.

*Whitley*, 475 U.S. at 322. In this case, the evidence does not support a reliable inference that defendant slammed the trap wantonly to inflict pain on plaintiff.

The court reaches this conclusion by considering the factors set out in *Whitley*, and recognizing that this is a case close to the pattern of *Outlaw v. Newkirk*, 259 F.3d 833, 839 (7th Cir. 2001). Defendant had a legitimate penological reason to close the trap. The defendant submitted a substantially unopposed declaration that an open trap provides opportunity for an inmate to assault correctional officers. Dkt. 58, ¶ 9. Courts have also recognized that an open cell trap poses a security risk because inmates might throw garbage or other dangerous materials through it. *Outlaw*, 259 F.3d at 839. Plaintiff is an assaultive inmate, who was serving an

5

extended period in segregation for battery. Dkt. 58-6. During the September 19, 2012, incident, plaintiff does not deny that he was verbally aggressive to the defendant. Under these circumstances, defendant had a very good reason to promptly close the trap after an assaultive inmate was verbally aggressive toward him.

    Defendant was entitled to use force if necessary to close the trap. Plaintiff admits that during this interaction he placed his hand on the cell trap, which is also confirmed by the vestibule video. The parties dispute precisely when plaintiff put his hand on the trap. Plaintiff says his hand was on the trap before defendant started to close it; defendant says plaintiff put his hand on the trap to stop defendant from closing it. The dispute is not material, because in any case defendant had reason to close the trap, especially if plaintiff resisted. If defendant had to force the trap against plaintiff's resistance, force was justified. If plaintiff's hand were innocently resting on the trap, no great force would have been required to close the trap. If plaintiff's innocently resting hand were inadvertently caught in the process of closing the trap, plaintiff would have no constitutional-level injury because the injury would not have been wantonly inflicted. In sum, defendant had good reason to close the trap, and, if necessary, to use some force to do so.

    The next question under *Whitley* is whether the amount of force used by the defendant was so excessive as to be wanton. To address this question, the court considers the videos of the interaction and the extent of plaintiff's injuries.

    WSPF security cameras continuously recorded activities inside plaintiff's segregation cell from a camera mounted near a ceiling corner. The camera is positioned on the same wall as the cell door, and the cell door is set into the wall opening so that the door is nearly on the same plane as the exterior of the cell wall. As a result, the camera affords a fair view of plaintiff, but no interior view of the cell door or the trap. The vestibule camera is also positioned near a

ceiling corner, but on the wall opposite plaintiff's cell door. Thus, the vestibule camera affords a good view of the exterior of the cell door and trap. The recording apparatus is programmed to record one frame per second unless motion is detected, when it records five frames per second. The result is that the videos do not capture motion with the fluidity of a standard video recording. There is no audio, and the time code on the two videos is not synchronized.

Despite the limitations of the recording system, the videos provide a record of the 8 a.m. interaction. Defendant approaches plaintiff's cell holding a roll of toilet paper in his left hand and unlocks and opens the trap with his right. He moves the toilet paper into his right hand and uses his left to give plaintiff the pen (which is not actually visible in the video). Plaintiff's hands are visible in the trap opening, and plaintiff's right hand is resting on the door to the trap. Defendant moves the toilet paper back to his left hand. After a brief pause, presumably when plaintiff demands the toilet paper, defendant closes and locks the trap in a substantially continuous motion with his right hand. Although there appears to be a moment's hesitation after defendant starts to close the trap, defendant does not appear to encounter significant resistance, and he does not appear to exert any significant force in closing the trap. About 10 seconds elapse between the opening of the trap and its reclosing.

The interior cell video shows plaintiff getting up from the bed; moving momentarily to the cell door; backing away; picking up an item (presumably the old pen) from a shelf; and moving to the door again. He stands there for about 10 seconds, moves back a bit while his hands are still near the door, and then moves his body back close to the door for about another 10 seconds. He then raises his hands briefly as though he is looking at them. He looks out the window in the wall of his cell, and then moves back near the door and presses the call button.

The exterior video is plainly inconsistent with plaintiff's contention that defendant closed the trap with extreme force or his contention that defendant kept the pressure on the

7

trap while plaintiff screamed in pain. The interior video is not very informative. It would be consistent with plaintiff getting his fingers pinched in the trap, but plaintiff's body movements do not suggest that he experienced serious injury or great pain. Plaintiff contends in his declaration that there are 29 seconds missing from the interior video, but the time code on that video does not contain any gaps. In any case, even if the interior video were incomplete, the exterior video effectively refutes plaintiff's case.

Plaintiff's minor physical injuries do not support his contention that defendant's use of force was wanton. To be clear: the fact that plaintiff did not suffer serious injuries does not by itself defeat his claim. A minor injury wantonly inflicted would violate an inmate's rights. *Guitron v. Paul*, 675 F.3d 1044, 1046 (7th Cir. 2012) (rejecting de minimis injury doctrine). But the extent of plaintiff's injuries is properly considered as evidence of the amount of *force* used by defendant. *Whitley*, 475 U.S. at 321. In this case, WSPF health records show that plaintiff suffered only a scrape on the knuckle. But even if the WSPF nurse downplayed plaintiff's injuries as he alleges in his declaration, Dkt. 64, ¶ 11, the pain and injury of which plaintiff complains is consistent with his getting his hand inadvertently pinched in the trap.[2] Thus, even if the jury believed plaintiff's testimony that his hand hurt for two weeks, no reasonable jury could find that defendant had wantonly inflicted that pain in light of the video evidence.

---

[2] Plaintiff's declaration testimony about the extent of his injuries is dubious, because it apparently contradicts the medical records containing his prior admissions concerning his injuries. It is not entirely clear why plaintiff's medical records are not before the court. Based on plaintiff's response to defendant's proposed facts, it appears that plaintiff has not consented to their disclosure.

**B. Plaintiff's impeachment evidence is inadmissible**

Plaintiff argues that defendant is not credible because he admits that inmates have assaulted and disrespected him, and that he has been accused of several assaults against inmates. Dkt. 62, at 6-7. Plaintiff contends that evidence of these other acts is admissible under F.R.E. 404(b) as proof of "routine, opportunity, intent . . . ." Plaintiff argues that inmates have assaulted and disrespected defendant, thereby giving defendant a motive to retaliate by using excessive force. Further, because other inmates have accused defendant of assault, defendant's denial that he wantonly slammed plaintiff's hand in the trap should be discredited. But plaintiff's argument has a fundamental flaw.

As the court has previously ruled, Dkt. 42, mere accusations against defendant are not admissible as prior acts evidence under F.R.E. 404. The plaintiff himself admits that "It is not known if any of those claims had merit, it is just known they were alleged." Dkt. 62, at 6. Thus, plaintiff has no admissible prior act with which to impeach defendant.[3] The evidence that defendant had been disrespected and assaulted by inmates gains nothing, because every correctional officer in the segregation unit must deal with difficult inmates.

The parties do not address the 11 a.m. incident in their briefs, but the court will touch on it briefly. Plaintiff's allegation that defendant threatened to slam plaintiff's hand in the trap at lunch is dubious, given that he was found guilty of lying about it. But the alleged threat came three hours after the alleged slamming incident, and thus it says nothing about defendant's actions in the 8 a.m. incident. Even if by 11 a.m., defendant had grown so exasperated by

---

[3] Although the court previously suggested that if complaints against defendant had been found meritorious, they would "probably" fit within exceptions allowed by Rule 404(b), Dkt. 42, it is not clear that even meritorious allegations of prior assaults by defendant would be admissible. *See United States v. Gomez*, 12-1104, 2014 WL 4058963 (7th Cir. Aug. 18, 2014). But the court need not reach the question, because plaintiff has no evidence of meritorious allegations.

9

plaintiff's disrespectful conduct that he taunted plaintiff, that fact is not sufficient to support a reasonable inference that three hours earlier he had wantonly used excessive force for the purpose of inflicting pain on plaintiff.

CONCLUSION

This is a case like *Outlaw*, in which the plaintiff could not survive summary judgment on the basis of mere allegations that the defendant correctional officer had behaved wantonly. In that case, as here, even if the plaintiff's version of the facts were accepted, the correctional officer had a legitimate penological reason to close a cell opening, even if doing so required force, and even if the plaintiff suffered minor injuries as a result. In this case, plaintiff faces the additional impediment that video evidence refutes his claim.

Plaintiff has adduced no direct evidence that defendant acted wantonly or intended to inflict pain, nor does the record reflect evidence that would support a reasonable inference that defendant had acted wantonly. Neither the minor differences in the factual accounts of the parties nor plaintiff's unsupported contention that defendant acted maliciously requires resolution at trial. Accordingly, defendant's motion for summary judgment will be granted.

ORDER

IT IS ORDERED that:

1. Defendant's motion for summary judgment, Dkt. 52, is GRANTED;

2. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 28th day of August, 2014.

> BY THE COURT:
> /s/
> JAMES D. PETERSON
> District Judge